IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


DREW C. HARTLEY,
      Petitioner,

vs.                                      Case No.:  5:07cv101/RS/EMT

WALTER A. McNEIL,
      Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

This matter is before the court on Petitioner's habeas petition filed under 28 U.S.C. § 2254 (Doc. 1).   Respondent filed an answer (Doc. 16), and Petitioner filed a reply (Doc. 20). Additionally, Petitioner filed a Motion for Discovery and Expansion of the Record (Doc. 30), and Respondent filed a response in opposition to the motion (Doc. 35).

After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that an evidentiary hearing is not required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief, and that the petition is without merit and should be denied.

I.      BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a state inmate currently incarcerated at Martin Correctional Institution.  He challenges a prison disciplinary report (hereinafter "DR") he received at Washington Correctional Institution (WCI) in September of 2005, which resulted in a penalty of thirty days in disciplinary confinement.[1]  Petitioner claims that he was denied due process during the disciplinary proceedings

---

[1]On September 22, 2005, Petitioner was convicted of Disobeying an Order which occurred on September 15, 2005 (Doc. 16, Exs. A, G).

(Doc. 1 at 16–24).  Petitioner seeks expungement of the DR from his inmate records and the grant of incentive gain time he would have been eligible to earn had he not received the DR (*id.* at 15). Petitioner states he challenged the DR by exhausting his administrative appeals and filing a timely petition for writ of mandamus in the Circuit Court in and for Leon County, Florida, but the state court denied the petition (Doc. 1 at 19–20; Doc. 16, Exs. H–T).  Petitioner sought certiorari review by the Florida First District Court of Appeal (First DCA), and the First DCA affirmed the trial court decision per curiam on March 7, 2007, with the mandate issuing April 4, 2007 (Doc. 1 at 20–21; Doc. 16, Exs. U–Y).  Hartley v. McDonough, 951 So.2d 44 (Fla. 1st DCA 2007).

II.      ANALYSIS

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  In the instant case, Petitioner claims that he was denied due process on the following grounds:  (1) he was denied an adequate investigation because the witnesses he requested were not interviewed and the documentary evidence he requested was not provided, and (2) he was denied the opportunity to present live witness testimony at the hearing, and the disciplinary team failed to give a reason for denying his request (Doc. 1 at 16–24).  Upon independent review of the merits of Petitioner's claims, the undersigned concludes that Petitioner has failed to show that the disciplinary decision violated his due process rights.

Where a prison disciplinary hearing may result in the loss of good time credits, the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), held that the inmate must receive:  (1) written notice of the charges brought against him at least twenty-four hours before the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement of the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken.  *Id.*, 418 U.S. at 564–66.  In a subsequent case, the Supreme Court addressed the quantum of evidence necessary to support the factfinder's decision.  In Superintendent, Mass. Correctional Inst. v. Hill, 474 U.S. 445, 455–56, 105 S. Ct. 2768, 2774, 86 L. Ed. 2d 356 (1985), the Court held:  "revocation of good time does not comport with the 'minimum requirements of procedural due process' unless

the findings of the prison disciplinary board are supported by some evidence in the record." *Id.*, 472

U.S. at 454 (citation omitted).  The court further explained:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . ." United States ex rel. Najtauer v. Commissioner of Immigration, 273 U.S. [103], 106, 47 S. Ct. [302], 304. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.*, 472 U.S. at 455 (citations omitted).

In cases where a disciplinary decision does not result in the loss of gain time, and the only penalty is placement in disciplinary confinement for thirty days, due process protections do not attach.  *See* Sandin v. Conner, 515 U.S. 472, 485, 115 S. Ct. 2293, 2301, 132 L. Ed. 2d 418 (1995). This is so because "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.*, 515 U.S. at 485–86.  The Court also considered the petitioner's argument that the disciplinary decision affected the duration of his sentence because a record of prison misconduct could affect his eligibility for parole. *Id.* at 487.  The Court observed that nothing in state law required the parole board to grant parole in the absence of prison misconduct, and the decision to grant parole "rest[ed] on a myriad of considerations." *Id.*  The Court concluded that "[t]he chance that a finding of misconduct will alter the balance [in consideration of parole] is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Id.*

Following Sandin, a number of Circuit Courts have held that there is no liberty interest and, therefore, no due process protection in the mere opportunity to earn gain time.  *See* Abed v. Armstrong, 209 F.3d 63, 66–67 (2d Cir. 2000) (although inmates have a liberty interest in good time credit they have already earned,  no such interest has been recognized in the opportunity to earn good time credit where, as here, prison officials have discretion to determine whether an inmate or class of inmates is eligible to earn good time credit); Antonelli v. Sheahan, 81 F.3d 1422, 1431 (7th Cir. 1996) (holding that convicted prisoner with no access to good time credit program because he was incarcerated in county jail had no constitutional interest in the opportunity to earn good time

credit); <u>Luken v. Scott</u>, 71 F.3d 192, 193 (5th Cir. 1995) (applying <u>Sandin</u> and holding that the loss

of the opportunity to earn gain time is not a constitutionally protected liberty interest).

      In the instant case, the disciplinary proceedings challenged by Petitioner resulted only in

Petitioner's placement in disciplinary confinement for thirty days; it did not result in the forfeiture

of earned gain time. Therefore, pursuant to <u>Sandin</u>, it does not appear that Petitioner was entitled

to the due process protections of <u>Wolff</u> and <u>Hill</u>. Petitioner argues that the duration of his

incarceration was affected by the disciplinary action because he was not eligible to earn incentive

gain time for approximately four months following the disciplinary report (Doc. 1 at 22; *see* Doc.

30 at 9). Petitioner contends that Florida law creates a liberty interest in the expectation of earning

incentive gain time; therefore, he was entitled to the due process protections of <u>Wolff</u> and <u>Hill</u>.

      Florida law provides the following, with respect to incentive gain time:

(1) The department is authorized to grant deductions from sentences in the form of gain-time in order to encourage satisfactory prisoner behavior, to provide incentive for prisoners to participate in productive activities, and to reward prisoners who perform outstanding deeds or services.

(2)(a) The department shall establish for each prisoner sentenced to a term of years a "maximum sentence expiration date," which shall be the date when the sentence or combined sentences imposed on a prisoner will expire. In establishing this date, the department shall reduce the total time to be served by any time lawfully credited.
. . . .
(3)(a) The department shall also establish for each prisoner sentenced to a term of years a "tentative release date" which shall be the date projected for the prisoner's release from custody by virtue of gain-time granted or forfeited as described in this section. The initial tentative release date shall be determined by deducting basic gain-time granted from the maximum sentence expiration date. Other gain-time shall be applied when granted or restored to make the tentative release date proportionately earlier; and forfeitures of gain-time, when ordered, shall be applied to make the tentative release date proportionately later.
. . . .
(4)(b) For each month in which an inmate works diligently, participates in training, uses time constructively, or otherwise engages in positive activities, the department may grant incentive gain-time in accordance with this paragraph. The rate of incentive gain-time in effect on the date the inmate committed the offense which resulted in his or her incarceration shall be the inmate's rate of eligibility to earn incentive gain-time throughout the period of incarceration and shall not be altered

by a subsequent change in the severity level of the offense for which the inmate was sentenced.

. . . .

3.  For sentences imposed for offenses committed on or after October 1, 1995, the department may grant up to 10 days per month of incentive gain-time, except that no prisoner is eligible to earn any type of gain-time in an amount that would cause a sentence to expire, end, or terminate, or that would result in a prisoner's release, prior to serving a minimum of 85 percent of the sentence imposed.  For purposes of this subparagraph, credits awarded by the court for time physically incarcerated shall be credited toward satisfaction of 85 percent of the sentence imposed. Except as provided by this section, a prisoner shall not accumulate further gain-time awards at any point when the tentative release date is the same as that date at which the prisoner will have served 85 percent of the sentence imposed.  State prisoners sentenced to life imprisonment shall be incarcerated for the rest of their natural lives, unless granted pardon or clemency.

. . . .

(7) The department shall adopt rules to implement the granting, forfeiture, restoration, and deletion of gain-time.

Fla. Stat. § 944.275 (2005).

The Florida Department of Corrections has adopted provisions of the Florida Administrate Code to provide procedures concerning award of incentive gain time.  Subsection (3) of Section 33-601.101 sets forth detailed methods for evaluating a prisoner's "institutional adjustment" as reflected in "evaluations from security, work and program components."  Many factors are considered, including hygiene, appearance of clothing, adherence to rules and respect for others, maintenance of living quarters, work performance, and program performance.  *Id.*

Subsections (5) and (6) provide:

(5) Disqualifications.  The following conditions will disqualify an inmate for an award of incentive gain time for the period stated.

. . . .

(6) Inmates in disciplinary confinement status are not eligible for a work/program rating even if assigned to work or programs while in disciplinary confinement. Inmates in disciplinary confinement are eligible for a security rating award which can be modified by the correctional probation officer in accordance with paragraph 33-601.101(3)(b), F.A.C.

(a) Disciplinary or court action.  An inmate is not eligible to receive incentive gain time for the month in which there is an infraction of the rules of the Department or the laws of the State for which he is found guilty. . . . Any inmate who is found

guilty of a disciplinary report on or after April 21, 1996 and who is serving a sentence imposed for an offense committed on or after October 1, 1995 shall be eligible to earn incentive gain time as follows:

. . . .

2.  For disciplinary reports in which the final approved action is less than or equal to 30 days confinement or less than or equal to 30 days loss of gain time, the inmate shall not be eligible to earn incentive gain time for three months following the month in which the disciplinary infraction occurred.  The three month period of ineligibility shall not begin to run until the inmate is in the department's custody and would be otherwise eligible to earn gain time but for the disciplinary action or new offense.

Fla.  § 944.275 (2005).

In the instant case, Petitioner was not eligible to earn incentive gain time for September, 2005, the month of the disciplinary infraction, or the period October through December, 2005, the three months following the month in which the disciplinary infraction occurred; therefore, he cannot show that he lost credits that were actually earned.  Furthermore, nothing in Florida law required prison officials to grant Petitioner incentive gain time even in the absence of the disciplinary decision; indeed, whether Petitioner would have actually been awarded incentive gain time in any given month depended upon a number of factors tied to his future behavior, and the amount of the award, if any, was entirely within the discretion of DOC officials who were making these evaluations.  Therefore, based upon Sandin, the undersigned concludes that the opportunity to earn incentive gain time provided by Florida law is not a sufficient liberty interest to invoke the protections of the Due Process Clause.  Accordingly, Petitioner cannot establish that the disciplinary decision resulted in a violation of his constitutional rights.

Finally, in light of the above analysis, the  materials sought by Petitioner in his Motion for Discovery and Expansion of the Record (Doc. 30) would not in any way affect the outcome of this case.  In his discovery motion, Petitioner requests that Respondent provide him a copy of the following documents, and that the record be expanded to include them:

1.      "Contact cards" used in determining all types of Petitioner's gain-time for the period September of 2005 through January of 2006;

2.      Gain-time notices from September of 2005 through January of 2006, indicating Petitioner's inmate performance ratings and lost gain-time credits; and

> 3.      Documents that support the DOC's determinations of Petitioner's gain-time
>         for the period September of 2005 through January of 2006

(Doc. 30 at 10–11).  Petitioner contends that the above-listed information is necessary to establish a prima facie case that he "earned" incentive gain time, even though he acknowledges that he was not eligible to earn it under State law, and it was never actually awarded to him in light of the disciplinary decision which is the subject of this habeas action (*id*. at 1, 7–9).  Because Florida law clearly provides that Petitioner was not eligible to earn incentive gain time during the month of the disciplinary infraction or the three-month period following that month, the records sought by Petitioner will not show that he earned incentive gain time during that period.  At most, the records may show that he would have had an opportunity to earn incentive gain time during that period had it not been for the disciplinary decision but, as discussed *supra*, this opportunity to earn gain time is not a constitutionally protected liberty interest.  Therefore, the documents that Petitioner seeks to discover would not in any way affect the outcome of this case.

Accordingly, it is **ORDERED**:

Petitioner's Motion for Discovery and Expansion of the Record (Doc. 30) is **DENIED**.

And it is respectfully **RECOMMENDED**:

That the habeas petition challenging the disciplinary decision issued on September 22, 2005, Log #110-051370, at Washington Correctional Institution be **DENIED**.

At Pensacola, Florida, this  2nd  day of April 2008.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

  **Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts,</u> 858 F.2d 698, 701 (11th Cir. 1988).**